IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** : | |
| : | **CRIMINAL ACTION** |
| v. : | |
| : | **NO. 04-334** |
| **JOSEPH HOFFMAN** : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                                       **July    2, 2008**

Now before the Court is the Petition of Joseph Hoffman ("Petitioner") to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Petition will be denied.

**I.     BACKGROUND**

On February 9, 2005, a jury convicted Petitioner of one count of mail fraud in violation of 18 U.S.C. §§ 1341, 1346 (Count Five); one count of conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. § 1951(a) (Count Six); and two counts of Hobbs Act extortion in violation of 18 U.S.C. § 1951(a) (Counts Seven and Eight). On September 9, 2005, the Court sentenced Petitioner to 24 months of imprisonment on Counts Five through Eight, to run concurrently, three years of supervised release, restitution in the amount of $230,913, and a special assessment of $400. Petitioner timely appealed the conviction and sentence, and the Third Circuit affirmed.

On October 31, 2007, Petitioner filed the instant Petition, alleging ineffective assistance of counsel and erroneous calculation of the applicable Sentencing Guidelines. Petitioner further alleges that in light of his medical condition, implementation of his sentence would constitute cruel and unusual punishment in violation of the Eighth Amendment.

II.     **DISCUSSION**

1.      **Ineffective Assistance of Counsel**

   a.      *Conflict of Interest*

Petitioner claims that his counsel was ineffective as a result of an alleged conflict of interest, and that his conduct was the proximate cause of Petitioner's conviction on Count Five of the Indictment. Count Five charged Petitioner with illegal use of the mail by sending his Co-Defendant, Charles Mirarchi, a check for $4,000, falsely representing that it was repayment of a loan.[1]

Petitioner attaches the sworn declaration of his father, Joseph Hoffman, Jr., which states that shortly after Petitioner was approached by the F.B.I. and informed that he was the target of a criminal investigation, he met with his newly-retained counsel, F. Emmett Fitzpatrick, who later represented him during trial and sentencing.[2] Fitzpatrick allegedly told Petitioner that he should "return any money given to him by Charles Mirarchi" and characterize it as a loan, so that "Mirarchi could not deny he got back the money." Decl. of Joseph Hoffman, Jr. ("Hoffman, Jr. Decl.") at ¶¶ 6-7. Hoffman, Jr. further states that he "thought it was a bad idea," but that his son decided to act on the advice of counsel. Id. at ¶ 7.[3]

Although the affidavit clearly states that Petitioner relied on the advice of counsel in

---

[1]    The letter, sent in early March, 2003, stated: "Dear Charlie Mirarchi: Thank you for your extended love and assistance financially. This certified check for the amount of four thousand dollars should satisfy any moneys owed. Love you, CP. Joe Hoffman."

[2]    Petitioner was also represented by co-counsel, F. Emmett Fitzpatrick, III.

[3]    The Government has represented that F. Emmett Fitzpatrick is suffering from Alzheimer's Disease, and thus would not be able to testify at an evidentiary hearing.

2

returning the money to Mirarchi, Petitioner insists that he is <u>not</u> presenting an advice of counsel defense.  See Petitioner's Response, at 8.  Instead, he argues that Fitzpatrick's alleged advice created a conflict of interest:

> [Petitioner's] father's allegations, if true, establish that Mr. Fitzpatrick's interests clashed with Mr. Hoffman's interest on a material matter.  Mr. Hoffman's father's statement, if true, would establish that Mr. Fitzpatrick should have recused himself from the case, and informed the court that he advised Mr. Hoffman to return money to Mr. Mirarchi.  If Mr. Mirarchi told Mr. Hoffman to return the money, it would negate the Government's theory that the mailing was for purposes of concealing the fraud.

<u>Id.</u>

The Government contends that the allegations in the declaration, even if true, do not establish either a conflict of interest or an advice of counsel defense because the declaration does not state that Petitioner informed Fitzpatrick that the money he was returning to Mirarchi was bribe money.  Thus, in the absence of any allegation that Fitzpatrick was informed of all the critical facts before he rendered his advice, Petitioner cannot demonstrate a conflict, nor can he argue persuasively that he relied on the improper advice of counsel.  See, e.g., <u>United States v. Traitz</u>, 871 F.2d 368, 382 (3d Cir. 1989) ("The advice of counsel defense, based on good faith reliance on an attorney's advice, requires *full disclosure of all the material facts*...." (emphasis added)); <u>Am. Int'l Airways, Inc. v. Am. Int'l Group, Inc.</u>, 1991 WL 255661, at *2 (E.D. Pa. Nov. 14, 1991) ("The only way defendant can sustain a defense of reliance on advice of counsel is to present testimony or other evidence of such advice, as well as evidence that *all pertinent facts were disclosed to counsel*." (emphasis added)).

Petitioner cites no authority for his proposition that a claim of conflict of interest is cognizable under the circumstances he alleges.  See e.g. <u>United States v. Gambino</u>, 864 F.2d

1064, 1070 (3d Cir. 1988) ("Overall, conflicts problems are more likely to arise in cases involving joint representation in a single proceeding."). Moreover, he has consistently failed to state that he informed his attorney of the critical facts, and instead complains that the Government "concoct[ed] what appears to be an unnecessary pleading requirement," and that "there is not a shred of evidence indicating [Petitioner] did not disclose all pertinent facts to Mr. Fitzpatrick." See Petitioner's Reply, at 5. Petitioner misapprehends the burden of proof applicable to Section 2255 claims. The Government is not required to prove that Petitioner did not disclose all pertinent evidence to his attorney. The burden to prove ineffective assistance of counsel, as well as any other claim arising under Section 2255, rests with Petitioner. See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985); Word v. United States, 604 F.2d 1127, 1130 (8th Cir. 1979) ("In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner."); Bradley v. United States, 2005 WL 1607019, at *4 (D.N.J. July 8, 2005). Thus, even assuming the truth of the allegations in the affidavit, Petitioner has failed to allege sufficient facts to establish either a conflict of interest or an advice of counsel defense. If Fitzpatrick were not informed that Petitioner was returning bribe money to Mirarchi, his advice to Petitioner would not be improper, and no actual conflict would exist. Because Petitioner has failed to allege a factual basis for his claim, he is not entitled to relief and the claim will be dismissed.

      b.     *Insufficiency of the Evidence*

On appeal, Petitioner argued that the evidence was insufficient to support his conviction on the mail fraud charge in Count Five of the Indictment because the mailing took place after the scheme was concluded. The Government responded that because Petitioner failed to raise the

argument in his post-trial motion for judgment of acquittal, appellate review should be conducted under a deferential "plain error" standard. The Third Circuit agreed, and dismissed Petitioner's claim. Petitioner now argues that his trial counsel was deficient for failing to raise the insufficiency of the evidence claim in his post-trial motion, and that the failure resulted in the application of a deferential standard of review.

A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 688-92 (1984). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. In evaluating counsel's performance, the Court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted).

It is axiomatic that counsel cannot be deemed ineffective for failing to pursue a meritless claim or defense. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); Blount v. United States, 330 F. Supp. 2d 493, 495 (E.D. Pa. 2004). In the course of trial the Government offered ample evidence in support of its mail fraud charge, including a recording of a March 3, 2003 meeting between Petitioner, Petitioner's secretary ("Schofield"), and Mirarchi, during which Schofield suggested that the money could be

characterized as a business loan.  See Feb. 2, 2005 Trial Tr. at 194.[4]  Shortly thereafter, Petitioner sent Mirarchi the $4,000 check along with a letter mischaracterizing it as a loan repayment.  See id. at 196-98.  In light of the incriminating evidence adduced by the Government, counsel's failure to raise the sufficiency argument in his post-trial motions did not fall below an objective standard of reasonableness under the first prong of the Strickland test.

Petitioner further contends that had trial counsel adequately preserved the sufficiency claim, there is a "reasonable probability [that] the appeal would have been successful."  Petition, at 25.  The Court disagrees.  In rejecting Petitioner's sufficiency of the evidence claim on appeal, the Third Circuit stated as follows:

> Hoffman nonetheless argues that the mailing in issue could not have been in furtherance of the ticket-fixing scheme because Hoffman had completed the scheme by the time he made the mailing in issue.  The short answer to Hoffman's challenge is that mailings made to conceal either the existence or the true nature of a criminal scheme fall within the ambit of federal prohibitions against mail fraud ... Because the jury reasonably could have concluded that Hoffman made the mailing in question in an effort to conceal certain

---

[4]    Mirarchi, who was at the time cooperating with the Government, wore a wire to the meeting.  During trial, Mirarchi testified that he did not give Hoffman a loan, and understood the $4,000 to be a payoff:

> Q: And so the $4000 meant what to you?
>
> A: It meant that he was trying to give me the money that he got from me through Mr. Etemad.
>
> Q: And when you received this check and the letter in the mail, did you recall any conversation that you had had at the dinner with Joseph Hoffman and Joanna Schofield?
>
> A: She said on page 7 maybe that – something about make it look like a business loan.

Feb. 2, 2005 Trial Tr. at 198.

>inculpatory dealings with Mirarchi, the District Court therefore rightly declined to set aside Hoffman's conviction for mail fraud.

United States v. Hoffman, 229 Fed. Appx. 157, 158 (3d Cir. 2007). The Third Circuit's reasoning holds true regardless of the standard of review to be applied. Therefore, Petitioner cannot demonstrate that his counsel's actions resulted in prejudice under the second prong of the Strickland test. Because Petitioner has failed to establish that his attorney acted unreasonably in not preserving the insufficiency claim and that he was prejudiced by his attorney's actions, his argument is without merit.

**2.     Advisory Sentencing Guideline Calculations**

Petitioner argues that the Court relied on "materially inaccurate information and false assumptions in the computation" of the Sentencing Guideline range. Petition, at 27. The Court calculated Petitioner's total offense level as 22, and his criminal history category as I, which yielded an advisory Guideline range of 41 to 51 months. The Court departed from the applicable range, sentencing Petitioner to 24 months on each count, to run concurrently. The Court's calculation of the offense level was premised on an estimated loss amount of $230,913, which Petitioner contends was inaccurate because it failed to take into consideration that a large portion of parking tickets were routinely dismissed. See Petition, at 29.

This claim was previously litigated and rejected by the Third Circuit on direct appeal. It is well-settled that "Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993); see also Gonzales-Builes v. United States, 2006 WL 1765058, at *3 (D.N.J. June 23, 2006) ("[A] petitioner may not relitigate issues that were decided adversely to him on direct

appeal by means of a Section 2255 petition." (citations omitted)); United States v. Isabell, 1997 WL 793599, at *6 (E.D. Pa. Dec. 10, 1997) (same).

The Third Circuit has recognized four exceptions to this general rule: (1) newly discovered evidence that could not reasonably have been presented at the original trial; (2) a change in applicable law; (3) incompetent prior representation by counsel; or (4) other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims. See United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979); United States v. Smith, 235 F. Supp. 2d 418, 428 (E.D. Pa. 2002).

Petitioner argues that after it affirmed his conviction and sentence, the Third Circuit rendered a decision in United States v. Langford, 516 F.3d 205, 212 (3d Cir. 2008), holding that as a starting point in sentencing decisions, the district court must correctly calculate the applicable Sentencing Guideline range. See Langford, 516 F.3d at 212. He contends that the Langford decision, and the Supreme Court precedent on which it relies, Gall v. United States and Kimbrough v. United States, constitute a change in applicable law. However, the requirement that the district court's § 3553(a) analysis commence with a correct calculation of the advisory Guideline range does not constitute an intervening change in the law. Trial courts were required to correctly calculate the Guideline range well before the Supreme Court handed down its decisions in Gall and Kimbrough. Accordingly, the Third Circuit's decision in Langford does not provide a basis for this Court to depart from the general rule that Section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal. See, e.g., United States v. Crittenton, 2008 WL 343106, at *1 (E.D. Pa. Feb. 7, 2008). Because Petitioner's claim does not fall into any of the aforementioned exceptions, his claim is without

merit and will be dismissed.

**3.      Defendant's Medical Condition**

Petitioner contends that at the time of the original sentencing, the Court was unaware of the severity of his medical condition, and therefore could not adequately consider it in fashioning the appropriate sentence.  He further argues that implementation of his sentence would amount to "cruel and unusual punishment" in violation of the Eighth Amendment.

Petitioner's claim that the Court failed to consider his medical condition at the September 7, 2005 sentencing misstates the record.  A review of the sentencing transcript reveals that Petitioner's health condition was discussed at length during the hearing.  The Court then stated that Petitioner's medical condition should be considered in sentencing:

> The Court:   My own feeling is that if there was convincing evidence that the defendant's life would be endangered by incarcerating him the Court would not do it. [...]
>
> So I don't see the medical condition here as being sufficiently extraordinary to give a major downward departure.  On the other hand, **I do think it is something that needs to be considered in deciding the term of imprisonment** because life in prison is not something that would likely improve one's health under the circumstances ...

Sentencing Tr. at 74-75 (emphasis added).  Thus, although Petitioner is correct that at the time of sentencing he had not yet undergone a liver transplant, the Court sentenced him based on evidence available at the time and concluded that some consideration of Petitioner's condition was appropriate.  See, e.g., McNaughton v. United States, 3 F. Supp. 2d 592, 602 (E.D. Pa. 1998) (denying post-conviction relief after concluding that the petitioner "was not sentenced based on false, unreliable or materially incorrect information," even though the severity of his illness may not have been known fully at the time of sentencing); Black v. United States, 1993

9

WL 429019, at *1 (E.D. Pa. Oct. 22, 1993) ("The fact that [Petitioner] would be more comfortable at home due to his medical condition does not satisfy the requirements for a reduction of sentence under 28 U.S.C. § 2255.").

Petitioner contends that in light of his serious medical condition, a custodial sentence would violate his Eighth Amendment right to be free of cruel and unusual punishment. In effect, Petitioner asks the Court to conclude, prior to his incarceration, that he would not receive adequate care for his condition while in prison.

Over the past year, the Court has sought to ascertain whether the Bureau of Prisons ("BOP") could provide Petitioner with the appropriate level of care.[5] The Court ordered the Government to provide both documentary and testimonial evidence as to (1) the facility to which Petitioner would be assigned; (2) the ability of the BOP to provide Petitioner with adequate medical care, including the medication he requires; and (3) the BOP's ability to prevent interruption of Petitioner's medication during transport and/or evaluation of his medical needs.

On April 18, 2008, the Court held a hearing on the subject, and heard the testimony of a number of medical professionals, including Petitioner's treating physician[6] and the staff from the Federal Medical Center - Devens in Ayers, Massachusetts ("FMC-Devens"), where Petitioner has

---

[5] The Court permitted Petitioner to remain on bail pending resolution of his appeal and the instant § 2255 Petition.

[6] Dr. Victor Navarro of Thomas Jefferson University Hospital has been treating Petitioner since 2005, and currently provides him with post-transplant care. Dr. Navarro testified that Petitioner is "doing quite well," and that "his liver is functioning well." Testimony of Dr. Victor Navarro, 4/18/08 Hearing Tr. at 6. He further testified that although Petitioner is immunosuppressed, he leads a relatively normal life, and is permitted to socialize, go to the movies, or travel on an airplane or train. See id. at 31-33.

been pre-designated. The testimony revealed that an inmate assigned to FMC-Devens would have access to transplant specialists at the University of Massachusetts Medical Center, and confirmed that the BOP would be able to provide appropriate care for Petitioner, including uninterrupted access to his prescribed medication. See Testimony of Dr. James Pomposelli, 4/18/08 Hearing Tr. at 66-69, 73-75; Testimony of Dr. Sandra Howard, 4/18/08 Hearing Tr. at 116-26.

Thus, there is no evidence that the BOP would be unable to provide adequate care for Petitioner while he is serving his sentence. See United States v. Cutler, 520 F.3d 136, 172 (2d Cir. 2008) (vacating the district court's imposition of a non-incarcerative sentence based on a finding that the BOP could not care for the defendant given his serious health condition); United States v. Sherman, 1996 WL 131463, at *2 (7th Cir. March 20, 1996); United States v. Turner, 531 F. Supp. 2d 123, 131 (D.D.C. 2008) (rejecting the defendant's "speculation that the BOP will not be able to provide him with treatment as effective as the array of specialists with whom he has consulted for months, speculation that is undermined by the BOP's indication that it will be able to treat [the defendant] in a medical facility").

III.   **CONCLUSION**

Plaintiff has failed to demonstrate that he received ineffective assistance of counsel, that the Court erred in calculating the applicable advisory Sentencing Guideline range, or that his incarceration would violate his constitutional rights. Accordingly his Petition will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 04-334-1** |
| | : | |
| **JOSEPH HOFFMAN** | : | |

## ORDER

**AND NOW**, this       2nd       day of July, 2008, upon consideration of Petitioner Joseph Hoffman's Motion to Vacate, Set Aside, or Correct Sentence (docket nos. 146, 150, 161), and all responses thereto, it is **ORDERED** that:

(1)   The Motion is **DENIED**.

(2)   The Clerk of the Court shall mark the case **CLOSED**.

(3)   Because there is no probable cause to issue a certificate of appealability, no certificate of appealability shall issue.

BY THE COURT:


/s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN, J.**